IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| BOUNLOP PHANTHALASY,<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN AGENTS, INC., JOHN DOES 1-5, JANE DOES 1-5, DOE CORPORATIONS 1-5, DOE PARTNERSHIPS 1-5, DOE NON-PROFIT ORGANIZATIONS 1-5, and DOE GOVERNMENTAL AGENCIES 1-5,<br><br>Defendants. | CIVIL NO. 1:18-cv-00285 DKW-RLP<br>(Other Civil Action)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

## **MEMORANDUM IN SUPPORT OF MOTION**

**I.　INTRODUCTION**

The Complaint filed in this case is entirely without merit. Plaintiff Bounlop Phanthalasy was captured on video helping his supervisor steal company property (forklift batteries). When confronted with his actions, Plaintiff elected to resign to avoid facing criminal charges. Defendant's supervisor, who is Filipino, was terminated for stealing the forklift batteries.

In a stunning display of chutzpah, Plaintiff then filed a complaint with the Hawaii Civil Rights Commission ("HCRC") contending he was only forced to

resign because of his ethnic background (Laotian) and that he would not have been forced to resign if he was Filipino. The HCRC issued a no cause finding. Plaintiff then filed the current frivolous Complaint.

In his deposition, Plaintiff confirmed under oath that the only reason he filed the Complaint in this matter is because Hawaiian Agents did not fire his Filipino supervisor whom Plaintiff helped steal forklift batteries. In fact, Plaintiff's Filipino supervisor was terminated for stealing the forklift batteries, which unquestionably makes Plaintiff's Complaint frivolous.

This Motion should be granted for the following reasons:

A. Count I of the Complaint fails as a matter of law because there is no admissible evidence in support of a violation of Hawaii Revised Statutes section 378-2 for race discrimination. Specifically, Plaintiff's contention that he was singled out because he was not Filipino is contradicted by the fact his Filipino supervisor was in fact terminated. In addition, Plaintiff failed to provide any admissible evidence of race discrimination in his deposition and conceded that he has no documentary evidence to support his allegation.

B. Count II fails as a matter of law because there is no admissible evidence that Plaintiff is an individual with a disability under 42 U.S.C. Chapter 126 and/or that Hawaiian Agents retaliated against Plaintiff because he made a

resign because of his ethnic background (Laotian) and that he would not have been forced to resign if he was Filipino. The HCRC issued a no cause finding. Plaintiff then filed the current frivolous Complaint.

In his deposition, Plaintiff confirmed under oath that the only reason he filed the Complaint in this matter is because Hawaiian Agents did not fire his Filipino supervisor whom Plaintiff helped steal forklift batteries. In fact, Plaintiff's Filipino supervisor was terminated for stealing the forklift batteries, which unquestionably makes Plaintiff's Complaint frivolous.

This Motion should be granted for the following reasons:

A. Count I of the Complaint fails as a matter of law because there is no admissible evidence in support of a violation of Hawaii Revised Statutes section 378-2 for race discrimination. Specifically, Plaintiff's contention that he was singled out because he was not Filipino is contradicted by the fact his Filipino supervisor was in fact terminated. In addition, Plaintiff failed to provide any admissible evidence of race discrimination in his deposition and conceded that he has no documentary evidence to support his allegation.

B. Count II fails as a matter of law because there is no admissible evidence that Plaintiff is an individual with a disability under 42 U.S.C. Chapter 126 and/or that Hawaiian Agents retaliated against Plaintiff because he made a

charge, testified, assisted, or participated in any manner in a disability investigation.

C. Plaintiff failed to mitigate damages, if any, and admitted during his deposition that his purported physical ailments are unrelated to losing his job with Hawaiian Agents.

## II. BACKGROUND

### A. Theft Of Company Property

Founded in 1964, Hawaiian Agents provides quality sales, distribution, and warehousing solutions for national brands in the Hawaii market. Hawaiian Agents hired Plaintiff as a warehouse worker on February 9, 2015.

Hawaiian Agents had an employee handbook that governed the terms and conditions of Plaintiff's employment. He understood that the unauthorized possession and/or theft of company property was a violation of the employee handbook:

> Q. Can you turn to page fifty-one? The subheading in the middle of the page is rules of conduct, and there's some numbered paragraphs. Paragraph three is talking about examples of offenses that may result in discipline. Paragraph three says, theft, unauthorized possession, or use of company property or other employee's property.
> . . .
> Q. . . . Do you believe that theft is a violation of the company employee handbook?
>
> A. Yes.

Exhibit A (Deposition of Bounlop Phanthalasy, dated September 5, 2018) at 29:19-25, 31:9-11.

On or about April 13, 2017, Plaintiff and his supervisor were observed on video surveillance loading forklift batteries belonging to Hawaiian Agents onto a truck on Hawaiian Agents' company property. The forklift batteries had a value of $48,101.19. Some of the batteries were fairly new, being only two or three years old.

Plaintiff confirmed during his deposition testimony that he helped his supervisor load the batteries:

> Q. And during that day, your warehouse manager asked you to help him with some forklift batteries?
>
> A. Yes.
>
> Q. Okay, and what did you do?
>
> A. The battery is heavy, it's a charger, and we need two forklift to bring 'em off from the slot to put it on the pallet, so he tell me to go help him. That's what I did.
>
> Q. And on that first page there, can you identify who is in those pictures there?
>
> A. Yeah, that's me in the first forklift. I brought out all the order that's to go in the truck, the order that's finished already, and then right before that – I mean right after that, he asked me to help him the battery on this other side just for bring 'em out and put 'em on the pallet, because it was on the forklift.

Exhibit A at 20:23 – 21:14.

After seeing Plaintiff assist his supervisor with stealing the forklift batteries, Hawaiian Agents extended Plaintiff the professional courtesy of resigning in place of being terminated from employment. This option was provided to Plaintiff in a meeting that included Human Resources Consultant Malcolm Inamine and Hawaiian Agents Chief Financial Officer Michael Cahinhinan. Hawaiian Agents gave Plaintiff the option to resign in lieu of termination—despite video surveillance showing Plaintiff's participation in the theft—because Hawaiian Agents cared about Plaintiff's ability to obtain future employment. In addition, the company did not pursue criminal charges against Plaintiff with the Honolulu Police Department.

On June 7, 2017, Plaintiff resigned from Hawaiian Agents.

**B.** **Plaintiff Files Complaint Solely Because Filipino Supervisor Was Allegedly Not Terminated For Stealing Forklift Batteries**

On September 18, 2017, Plaintiff filed a Charge of Discrimination with the HCRC. He contended that he was forced to resign solely because he was not Filipino:

> I believe that I was threatened with discharge and forced to quit based on my ancestry/national origin. I was one of the few Laotians in a workforce largely comprised of persons of Filipino ancestry/national origin. I would not have been accused and forced to quit if I were Filipino.

Exhibit E (Charge of Discrimination, dated September 18, 2017) ¶ II.B.

On February 22, 2018, the HCRC issued a no cause finding:

> The investigator assigned to handle the discrimination complaint which you filed with the . . . [HCRC] has recommended that the case be closed on the basis of no cause. The case has been reviewed by the Executive Director who concurs with this recommendation. This does not necessarily mean that the problems you alleged did not occur, but that the investigation could not confirm those allegations to the standard of proof level required by the statute for the Commission to further pursue the case.

Exhibit F (Letter from William D. Hoshijo to Mr. Bounlop Phanthalasy, dated February 22, 2018).[1]

On May 23, 2018, Plaintiff filed the Complaint in this matter, in which he repeated the allegation that he was forced to resigned because he was Laotian and not Filipino. See Complaint, filed May 23, 2018 at 3-4 ¶ 8.

When asked in his deposition why he filed the Charge of Discrimination with the HCRC, he admitted the only reason he did so was because his Filipino supervisor was not terminated:

> Q. . . . So you contended that you were falsely accused of stealing because you are Laotian?
>
> A. Yes.
>
> Q. Now, on what basis did you conclude that they discriminated against you because you're Laotian?

---

[1] By dismissing Plaintiff's HCRC Complaint, the HCRC determined after its investigation that there was no reasonable cause to believe Plaintiff resigned because he was Laotian and not Filipino. See Haw. Rev. Stat. § 368-13(b) ("The executive director shall issue a determination of whether or not there is reasonable cause to believe that an unlawful discriminatory practice has occurred . . . .").

A. Because the guy that load up the battery is Filipino, and why didn't they fire him instead of firing me?

Q. Anything else?

A. That's it.

Q. So the only reason that you accused them of discrimination was because the supervisor that you were working with, according to your understanding, was not fired, and he's Filipino, correct?

A. Yes.

Exhibit A at 18:7-23.

### C. **Plaintiff's Filipino Supervisor Was Terminated**

On June 7, 2017, the same day that Plaintiff resigned from his employment, Hawaiian Agents terminated the Filipino Warehouse Manager for numerous policy violations, including theft of the forklift batteries. In other words, the entire premise of Plaintiff's discrimination claim is absolutely false.

### D. **Plaintiff's Lack Of Evidence And Failure To Mitigate Damages**

In addition to the fact Plaintiff's Filipino supervisor was terminated, which destroys Plaintiff's discrimination claims based on Plaintiff's own testimony, Plaintiff admitted he has no documents in support of his claims:

Q. So marked as Exhibit 2 is Hawaiian Agents' first request for production of documents dated August 3rd, 2018, and so what we asked for in this request is, essentially, all documents you have in support of the lawsuit that you filed, Exhibit 1. We did not receive any documents yesterday.
Do you have any documents in support of any of the claims that you are making in this case?

> A. What you mean by –
>
> Q. So do you have statements from people who are going to support you as a witness, for example?
>
> A. Oh, no, I don't.
>
> Q. Do you have anything else that would help you prove your claims in this case, any documents?
>
> A. The only document I have is from the Hawaiian Agents.
>
> Q. What document is that?
>
> A. The pictures.
>
> Q. The pictures of the warehouse –
>
> A. Yeah, when he was working –
>
> Q. And the forklift batteries?
>
> A. Yes.
>
> Q. I have those, and we are going to talk about those pictures. I just wanted to make sure there were no other documents you have, but I think your answer is no, you don't have any?
>
> A. No.
>
> Q. You don't have any other documents?
>
> A. No.

Exhibit A at 15:10 – 16:13.

In addition to the lack of evidence, Plaintiff confirmed that he has essentially done nothing to mitigate any alleged lost income:

Q. And you mentioned not being able to find a job. What have you done for work since leaving the company?

A. Actually, nothing. Sister supply me with the food and shelter.

. . .

Q. What have you done to try and find a job?

A. I tried a couple company. They just won't hire me.

Q. Just two?

A. Yes.

Q. You put in two job applications. When was that?

A. I would say July.

Q. Of last year?

A. This year.

Q. This year. So you resigned on June 7, 2017, from Hawaiian Agents. What I am asking is what have you done since then to find a job, and you said you put in a couple of applications?

A. Yes.

. . . .

Q. . . . So is it your testimony that the reason why you did not put in a job application from June, 2017 to June, 2018, is because of the stomach condition you were talking about?

A. Yes.

Q. So you were unable to work during that period?

A. Yes.

> . . .
>
> Q. In other words, your stomach condition, being unable to eat, was related to you being a diabetic; it wasn't related to you losing your job?
>
> A. Yes.
>
> Q. That's correct, right?
>
> A. Correct.
>
> Q. Okay, and since June of 2018, how many job applications have you put in anywhere?
>
> A. No.
>
> Q. None?
>
> A. No.

Exhibit A at 34:13 – 35:14, 36:18-24, 37:21 – 38:6.

Notably, despite the request for reinstatement in the Complaint, Plaintiff testified that he is not, in fact, seeking reinstatement. <u>Compare</u> Complaint at 6 ¶ A (seeking "reinstatement to his position with . . . full benefits") <u>with</u> Exhibit A at 31:22-24 ("Q. You do not want reinstatement, correct? You do not want to be reinstated to work for the company? A. No.").

## III. <u>STANDARD OF REVIEW</u>

This Court explained the summary judgment standard in <u>Maybin v. Hilton Grand Vacations Co., LLC</u>:

> Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Maybin v. Hilton Grand Vacations Co., LLC, 343 F. Supp. 3d 988, 994 (D. Haw. 2018).

Furthermore, "'[s]ummary judgment is available to decide [certain] purely legal issues'. . . . 'Summary Judgment can thus serve to set the issues for trial.'" Anzai v. Chevron Corp., 168 F. Supp.2d 1180, 1183 (D. Haw. 2001) (quoting Disandro v. Makahuena Corp., 588 F. Supp. 889, 892 (D. Haw. 1984)) (brackets in original).

### IV. ARGUMENT

#### A. Hawaiian Agents Is Entitled To Judgment As A Matter Of Law On Count I Of The Complaint.

Race discrimination occurs by an employer against an employee "when he or she is singled out and treated less favorably than others similarly situated on account of race." Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988). The Court must use the burden-shifting analysis in McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973). Specifically, (a) the plaintiff must establish a prima facie case of discrimination; (b) the employer must then

articulate some legitimate, nondiscriminatory reason for the employer's action; and (c) in order for plaintiff to prevail, the plaintiff then must show that the employer's reason, in step b, is pretext to hide discrimination. See McDonnell Douglas Corp., 411 U.S. at 802-04.

To survive a motion for summary judgment, Plaintiff must proffer admissible evidence as to each element of his race discrimination claim. See Texas Dep't of Com. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Sengupta v. Morrison-Knudsen Co., Inc., 804 F.2d 1072, 1074 (9th Cir. 1986). Plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position and was performing his job in a satisfactory manner; (3) he suffered an adverse personnel action at the hands of his employer; and (4) his employer treated similarly situated Filipino individuals more favorably than Laotian employees. See St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502, 506 (1993); McDonnell Douglas Corp., 411 U.S. at 802; Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 659 (9th Cir. 2002).

In this case, indisputable evidence shows Plaintiff cannot establish his prima facie case, because there is no admissible evidence that he was treated less favorably than similarly situated Filipino employees. In fact, Plaintiff was treated better than his Filipino supervisor, because Plaintiff was allowed to resign, while his supervisor was terminated. See Concise Fact Nos. 14-18.

As previously indicated, Plaintiff's sole basis for filing the Complaint was his (erroneous) belief that his supervisor was not terminated. See Exhibit A at 18:7-23. Because Plaintiff's supervisor was in fact terminated, Plaintiff's entire Complaint crumbles and Hawaiian Agents is entitled to a judgment as a matter of law on Count I. See Lyons v. England, 307 F.3d 1092, 1113 (9th Cir. 2002) ("A plaintiff's failure to offer evidence establishing a necessary element of his prima facie case will ordinarily be fatal to his claim.").

### B. Hawaiian Agents Is Entitled To Judgment As A Matter Of Law On Count II Of The Complaint.

Count II of the Complaint alleges a violation of 42 U.S.C. section 12203. This section prohibits retaliation against people who are involved in disability discrimination investigations:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful **by this chapter** or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing **under this chapter**.

42 U.S.C. § 12203(a) (emphasis added).

"This chapter" is 42 U.S.C. Chapter 126, which is equal opportunity for individuals with disabilities. See 42 U.S.C. § 12101. Nothing in the Complaint alleges that Plaintiff or anyone else had a disability, experienced disability discrimination, or "made a charge, testified, assisted, or participated in any manner" in a disability investigation.

Accordingly, Hawaiian Agents is entitled to judgment as a matter of law on Count II of the Complaint.

### C. Plaintiff Failed To Mitigate Damages.

Plaintiff had a duty to mitigate his alleged damages:

> The duty to mitigate damages requires a plaintiff to exercise reasonable diligence in finding other suitable employment. See Sangster v. United Air Lines, Inc., 633 F.2d 864, 868 (9th Cir. 1980). Failure to mitigate damages can prevent the award of both back pay and front pay. Goodman v. Boeing, 75 Wash. App. 60, 79, 877 P.2d 703 (1994). The question of whether an employee used sufficient diligence in seeking comparable employment is usually a question of fact, but, where the facts are undisputed and permit only one conclusion, it may be decided as an issue of law. Caudle v. Bristow Optical Co., 224 F.3d 1014, 1021 (9th Cir. 2000); E.E.O.C. v. High Speed Enter., Inc., 833 F. Supp.2d 1153, 1162 (D. Ariz. 2011).

Wurts v. City of Lakewood, No. C14-5113 BHS, 2015 WL 1954663, at *9 (W.D. Wash. Apr. 29, 2015).

In this case, the facts are undisputed that Plaintiff failed to try and find employment. See Exhibit A at 34:13 – 35:14, 36:18-24, 37:21 – 38:6. In other words, Plaintiff is unemployed by choice. Accordingly, even if there was evidence of race or disability discrimination (and there is none), Plaintiff's claim for back and front pay fails as a matter of law. See id. at *10 ("In other words, because Wurts did not apply for any other job, no reasonable juror could award Wurts any amount of lost wages and, therefore, there is no amount of wages to reduce. The Court grants Defendants' motion on Wurts's claim for lost wages.").

## V. CONCLUSION

For the foregoing reasons, Hawaiian Agents respectfully request judgment as a matter of law in its favor on Counts I and II of the Complaint.

DATED: Honolulu, Hawaii, February 11, 2019.

                                        /s/ Mark G. Valencia

                                        Attorney for Defendant and
                                        Counterclaim Plaintiff
                                        **HAWAIIAN AGENTS, INC.**