IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BOUNLOP PHANTHALASY, | ) | CIVIL NO. 18-00285 JAO-WRP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| vs. | ) | AND COUNTERCLAIM PLAINTIFF |
| | ) | HAWAIIAN AGENTS, INC.'S MOTION |
| HAWAIIAN AGENTS, INC.; JOHN | ) | FOR SUMMARY JUDGMENT |
| DOES 1-5; JANE DOES 1-5; DOE | ) | |
| CORPORATIONS 1-5; DOE | ) | |
| PARTNERSHIPS 1-5; DOE NON- | ) | |
| PROFIT ORGANIZATIONS 1-5; | ) | |
| and DOE GOVERNMENTAL | ) | |
| AGENCIES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>ORDER GRANTING DEFENDANT AND COUNTERCLAIM PLAINTIFF
HAWAIIAN AGENTS, INC.'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Bounlop Phanthalasy ("Plaintiff") initiated this Hawaiʻi Revised

Statutes ("HRS") § 378-2 wrongful termination and discrimination action on the

basis of his Laotian national origin. Defendant/Counterclaim Plaintiff Hawaiian

Agents, Inc. ("Defendant") moves for summary judgment on all counts of the

Complaint. For the reasons articulated below, the Court GRANTS Defendant's

Motion.

## BACKGROUND

A. <u>Factual History</u>[1]

Defendant, a warehousing and distribution company, employed Plaintiff as a warehouse worker from February 9, 2015 until June 7, 2017, the day he resigned under suspicion of theft of company property. Def.'s Concise Statement of Facts ("CSF") at ¶¶ 2, 13, Decl. of Michael Cahinhinan ("Cahinhinan Decl.") at ¶¶ 4, 13.

During the week of May 29, 2017, Ronald Rampon, an employee of Defendant, notified management about missing forklift batteries at Defendant's warehouse. *Id.* at ¶ 7, Cahinhinan Decl. at ¶ 8. Defendant consequently launched an investigation, which included reviewing video surveillance from the warehouse. *Id.* at ¶ 8, Cahinhinan Decl. at ¶ 9. Surveillance footage from April 13, 2017 captured Plaintiff and his Filipino supervisor—neither of whom were authorized to remove Defendant's forklift batteries from the premises—loading the batteries onto an unmarked truck. *Id.* at ¶¶ 9-10, 12, Cahinhinan Decl. at ¶ 10, Ex. A at 20:23-21:14, Ex. C. Plaintiff insists that he did not know his supervisor was stealing batteries. Pl.'s Responsive CSF at ¶ 9, Pl.'s Decl. at ¶ 5.

Defendant claims it offered Plaintiff the opportunity to resign in lieu of termination due to concerns about his future employability, while Plaintiff maintains that Defendant threatened to terminate him and pursue criminal charges

---

[1] The facts are undisputed unless otherwise indicated.

if he declined to resign. *Id.* at ¶¶ 13-14, Cahinhinan Decl. at ¶¶ 13-14; Pl.'s

Responsive CSF at ¶ 14, Pl.'s Decl., at ¶ 5, Exs. 1, 4. On the day Plaintiff

resigned, Defendant terminated Plaintiff's supervisor for stealing the forklift

batteries without offering him the option to resign.[2] *Id.* at ¶¶ 16-17, Cahinhinan

Decl. at ¶¶ 16-17. Defendant filed a criminal complaint against Plaintiff's

supervisor, but declined to pursue criminal charges against Plaintiff. *Id.* at ¶¶ 15,

18, Cahinhinan Decl. at ¶¶ 15, 18. According to Defendant, the theft of the

batteries, *i.e.*, company property, was the exclusive basis for obtaining Plaintiff's

resignation and terminating his supervisor, not their ethnicities. *Id.* at ¶ 21,

Cahinhinan Decl. at ¶ 20.

During his employment, Plaintiff received an Employee Handbook and

acknowledged receipt of it on May 10, 2016. *Id.* at ¶ 3, Cahinhinan Decl. at ¶ 5,

Ex. B at 70. The Handbook identifies "[t]heft, unauthorized possession, or use of

Company or other employee's property" as a prohibited offense which may result

in "disciplinary action, up to and including termination." *Id.* at ¶ 4, Cahinhinan

Decl. at ¶ 6, Ex. B at 51. Although Plaintiff claims he acted at the direction of his

supervisor in loading forklift batteries onto a pallet and denies that he was ever in

---

[2] The record indicates that Plaintiff mistakenly believed that his Filipino
supervisor was not fired. *Id.* at ¶ 20, Ex. A at 18:7-23. However, at the hearing,
Plaintiff's counsel clarified that Plaintiff understands that Defendant terminated his
supervisor.

unauthorized possession of company property, he acknowledged at his deposition that theft is a violation of the Handbook. *Id.* at ¶ 5, Ex. A at 29:19-25; 31:9-11; Pl.'s Responsive CSF at ¶ 5, Pl.'s Decl. at ¶ 5.

On September 21, 2017, Plaintiff filed a Charge of Discrimination with the Hawaii Civil Rights Commission ("HCRC"), alleging that he was forced to resign in lieu of being discharged based on his Laotian ancestry. *Id.*, Ex. E. Plaintiff believes that he was falsely accused of theft and that were he Filipino, Defendant would not have accused him or forced him to quit. *Id.* The HCRC dismissed Plaintiff's discrimination complaint on the basis of no cause. *Id.*

Plaintiff did not apply for another job until June 2018, and has not submitted additional applications since then. *Id.* at ¶¶ 28-30, Ex. A at 34:13-38:10.

B. Procedural History

Plaintiff commenced this action on May 23, 2018, in the Circuit Court of the First Circuit, State of Hawai'i. He asserts two claims: (1) wrongful termination and discrimination in violation of HRS § 378-2 (Count I) and (2) retaliation in violation of 42 U.S.C § 12203 (Count II).

Defendant subsequently removed the action based on federal question jurisdiction.

On February 11, 2019, Defendant filed the present Motion for Summary Judgment. ECF No. 22.

<u>LEGAL STANDARD</u>

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Citrate*, 477 U.S. 317, 323 (1986)); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W.*

*Elec.*, 809 F.2d at 630; *Blue Ocean Preservation Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Inferences must be drawn in favor of the nonmoving party. *Id.* However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *Id.* at 631-32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence

than otherwise necessary to show there is a genuine issue for trial. *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988)).

## DISCUSSION

A. Evidentiary Objections

As a preliminary matter, the Court addresses Defendant's objections to Plaintiff's submissions. Defendant seeks to exclude evidence on the following grounds: (1) Plaintiff's counsel, Charles Brower, improperly attempted to authenticate Exhibits 2 and 3 to the Responsive CSF; (2) Plaintiff failed to produce any documents responsive to Defendant's first request for production of documents and in fact testified that he had no documents in support of his claims; and (3) paragraph 6 of Plaintiff's declaration violates the sham affidavit rule. Reply at 2-6.

1. Authentication

FRCP 56(c)(4) requires "[a]n affidavit or declaration used to support or oppose a motion . . . [to] be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A court cannot consider unauthenticated documents in a motion for summary judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). A mere statement by counsel

that an exhibit is a "true and correct copy" does not authenticate a document if the affiant lacks personal knowledge. *Id.* at 774.

Exhibits 2 (Plaintiff's Pre-Complaint Questionnaire signed by Plaintiff and submitted to the HCRC) and 3 (notes from Plaintiff's HCRC intake interview) are unauthenticated because Mr. Brower lacks personal knowledge of both. Accordingly, the Court will not consider Exhibits 2 or 3. [3]

### 2. Discovery Failures

Defendant argues that Plaintiff should be estopped from opposing this Motion with documents that he failed to produce in discovery, particularly because he testified at his deposition that none exist. Given the Court's above ruling disregarding Exhibits 2 and 3, this issue is moot.[4]

### 3. Sham Affidavit Rule

Defendant lastly asks the Court to disregard paragraph 6 of Plaintiff's declaration—that the April 13, 2017 video surveillance merely shows him in his work area—because it contradicts his deposition testimony that the video

---

[3] Plaintiff would not survive summary judgment even if the Court weighed the information contained in these exhibits.

[4] Defendant wishes to preclude the use of any documents in opposition to the Motion. However, only Exhibits 2 and 3 appear to be at issue because Exhibit 1 is the HCRC Charge of Discrimination and Exhibit 4 is Defendant's Employer Statement to the HCRC. Plaintiff's reliance on non-produced documents, whether permitted or not, would not affect the outcome of this Motion.

surveillance depicted him in the first forklift.  The sham affidavit rule prevents a party from creating "an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  It "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony."  *Id.* at 266-67.  "In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.'"  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009)).  "[T]he non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit."  *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995).  Indeed, "[t]he sham affidavit rule applies where there is a clear inconsistency in testimony, not where the possibility of memory lapses exists."  *Cabasug v. Crane Co.*, 989 F. Supp. 2d 1027, 1055 (D. Haw. 2013), *abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries*, __ U.S. __, 139 S. Ct. 986 (2019).

Paragraph 6 of Plaintiff's declaration clearly contradicts his deposition testimony:

> Q:      And on that first page there, can you identify who is in those pictures there?
>
> A:      Yeah, that's me in the first forklift.  I brought out all the order that's to go in the truck, the order that's finished already, and then right before that -- I mean right after that, he asked me to help him the battery on this other side just for bring 'em out and put 'em on the pallet, because it was on the forklift.

Def.'s CSF, Ex. A at 21:6-14.  This inconsistency implicates the sham affidavit rule and requires the Court to disregard paragraph 6 of Plaintiff's declaration in ruling on this Motion.[5]

## B. Count II – Violation of 42 U.S.C. § 12203

Defendant requests summary judgment on Plaintiff's 42 U.S.C. § 12203 retaliation claim.  Section 12203 is the Americans with Disabilities Act's ("ADA") antiretaliation provision.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 357 (2013); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 454 (2008); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 190 (2005).  It prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified,

---

[5]  As with the other challenged evidence, the disposition of this Motion would not differ if the Court considered paragraph 6.

assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."[6]  42 U.S.C. § 12203(a).

At the hearing, Plaintiff's counsel conceded that this claim fails because Plaintiff does not assert disability discrimination, nor retaliation based on the same. Hence, the Court GRANTS summary judgment as to Count II.

## C.  Supplemental Jurisdiction Over HRS § 378-2 Claim

With the granting of summary judgment as to Count II, the basis for the Court's original jurisdiction no longer exists.  Where, as here, 28 U.S.C. § 1367(a)[7] conferred jurisdiction over Plaintiff's state law claim, the Court "may exercise supplemental jurisdiction over [the] state law claim[] without *sua sponte* addressing whether it should be declined under § 1367(c)."  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).  Under § 1367(c), courts "may

---

[6]  This provision is found in Chapter 126, which is titled "Equal Opportunity for Individuals with Disabilities."  42 U.S.C. § 12203.

[7]  Section 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). This decision is purely discretionary. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction." *Osborn v. Haley*, 549 U.S. 225, 245 (2007); *see also id.* (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350-351 (1988)) ("when [the] federal character of [a] removed case is eliminated while the case is *sub judice*, [the] court has [the] discretion to retain jurisdiction, to remand, or to dismiss").

Insofar as the Court already considered the record, concurrently evaluated Plaintiff's claims (which are largely governed by federal standards), and concludes that summary judgment is appropriate, the Court, exercising its discretion, addresses Plaintiff's HRS § 378-2 claim.

## D. Count I – Violation of HRS § 378-2

Plaintiff alleges discrimination in violation of HRS § 378-2(a)(1)(A), which prohibits the termination of an employee based on, among other things, race, color, and ancestry.[8] Haw. Rev. Stat. § 378-2(a)(1)(A). Under Hawaiʻi law, plaintiffs

---

[8] Plaintiff erroneously alleges national origin discrimination, which is prohibited by Title VII. Although Plaintiff cites Title VII in his Opposition, *see* Opp'n at 8, he only asserts discrimination pursuant to HRS § 378-2. Compl. at ¶¶ 9-11. The

have two avenues through which they may establish a prima facie case of discrimination. The first is through the "direct evidence" or "mixed motive" approach, in which "the plaintiff must show by direct evidence that discriminatory factors motivated the adverse employment decision." *Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 378, 14 P.3d 1049, 1059 (2000) (internal citations omitted). "Second, a plaintiff may attempt to prove individual disparate treatment by adducing circumstantial evidence of discrimination." *Id.* The Hawai'i Supreme Court utilizes the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when circumstantial evidence of employer discrimination is at issue. *Shoppe*, 94 Hawai'i at 378, 14 P.3d at 1059. In applying § 378-2, courts may look to federal courts' interpretation of Title VII for guidance. *Arquero v. Hilton Hawaiian Vill. LLC*, 104 Hawai'i 423, 429-30, 91 P.3d 505, 511-12 (2004); *see also Aoyagi v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 3d 1043, 1056 (D. Haw. 2015).

Direct evidence is evidence "which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1094-95 (9th Cir. 2005). Evidence that raises a genuine issue of fact as to whether a supervisor had discriminatory animus toward

---

Court therefore construes his discrimination claim as based on ancestry, which is the most analogous category under HRS § 378-2.

the plaintiff's race does not necessarily constitute evidence that the supervisor

subjected the plaintiff to any adverse employment action because of that

discriminatory animus. *Qin Li v. City & Cty. of Honolulu*, No. CV 14-00573 LEK-

RLP, 2017 WL 3015827, at *8 (D. Haw. July 14, 2017) (citing *Lalau v. City &

Cty. of Honolulu*, 938 F. Supp. 2d 1000, 1013 (D. Haw. 2013); *Machado v. Real

Estate Res.*, LLC, No. CIV. 12-00544 RLP, 2013 WL 3944511, at *7 (D. Haw.

July 30, 2013)). Circumstantial evidence is "evidence that requires an additional

inferential step to demonstrate discrimination." *Machado*, 2013 WL 3944511, at

*6 (citing *Coghlan*, 413 F.3d at 1095).

    1.  Plaintiff Does Not Provide Direct Evidence of Discrimination

Plaintiff has not presented direct evidence that discriminatory factors

motivated Defendant to force him to resign. The Court therefore applies the

*McDonnell Douglas* framework.

    2.  Plaintiff Fails to Establish a Prima Facie Case of Discrimination

Defendant argues that it is entitled to summary judgment because Plaintiff

cannot establish that he was treated less favorably than similarly situated Filipino

employees. Plaintiff points solely to the treatment of Mr. Rampon, a Filipino male,

as proof of discrimination. [9] Plaintiff contends that Mr. Rampon was not fired

---

[9] Plaintiff merely references a "Ronald" in the Opposition, but at the hearing, counsel clarified that Ronald is Mr. Rampon.

despite the fact that he was instructed to load a battery onto the same truck and on the same day as Plaintiff. Opp'n at 10.

To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, Plaintiff must demonstrate that: (1) he belongs to a protected class; (2) he was qualified for the job he held; (3) he suffered an adverse employment action (such as firing); and (4) similarly situated individuals outside the protected class were treated more favorably "or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *see also Furukawa v. Honolulu Zoological Soc'y*, 85 Hawai'i 7, 15, 936 P.2d 643, 651 (1997). "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted). However, a "plaintiff's failure to offer evidence establishing a necessary element of his prima facie case will ordinarily be fatal to his claim." *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002). Indeed, the granting of summary judgment is proper when a plaintiff fails to establish a prima facie case of discrimination. *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006).

     a.  <u>Defendant Did Not Treat Similarly Situated Non-Laotian</u>
         <u>Individuals More Favorably Than Plaintiff</u>

Defendant admits that Plaintiff meets the first three prongs of the *McDonnell Douglas* test: Plaintiff belongs to a protected class, he was qualified for the job he held, and he suffered an adverse employment action. Defendant thus limits its challenge to *McDonnell Douglas'* final prong, under which Plaintiff must demonstrate that Defendant treated similarly situated non-Laotian individuals more favorably "or [that] other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn*, 615 F.3d at 1156. Despite the low standard of proof required at the prima facie stage, and even drawing all inferences in Plaintiff's favor, the Court concludes that he has failed to show that Defendant treated him less favorably than similarly situated non-Laotian individuals.

To establish this *McDonnell Douglas* prong, Plaintiff must demonstrate that, at a minimum, he was similarly situated to Mr. Rampon in all material respects. *Moran*, 447 F.3d at 755 (citation omitted). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Hawn*, 615 F.3d at 1157; *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (quoting *Vasquez v. Cty. of Los Angeles,* 349 F.3d 634, 612 (9th Cir. 2003)) (quotations omitted) (alteration in original). Plaintiff must also show that the similarly situated employee was treated more favorably. *See Thomas v. Spencer*,

No. CV 15-00121 RLP, 2018 WL 3638080, at *7 (D. Haw. July 30, 2018) (finding that the plaintiff failed to establish the fourth element because plaintiff did not provide evidence that similarly situated employees received larger bonuses); *Jinadasa v. Brigham Young Univ. Haw.*, No. 14-00441 SOM/KJM, 2016 WL 6645767, at *5 (D. Haw. Nov. 9, 2016) ("A mere assertion . . . is insufficient to raise a genuine issue of fact as to whether [the plaintiff] was paid less . . . because of his race.").

Here, Plaintiff has offered no evidence that he and Mr. Rampon had similar jobs. Even if the evidence demonstrated that their jobs were similar, the record is devoid of evidence that Plaintiff and Mr. Rampon displayed similar conduct. Besides Plaintiff's bare and unsubstantiated allegation that Mr. Rampon "was instructed to load a battery onto the truck when it was returned," Opp'n at 10, he has not presented evidence that Mr. Rampon did so, or that Defendant's investigation implicated Mr. Rampon in the theft of the batteries. Indeed, the evidence properly before the Court establishes that Mr. Rampon did not participate in the April 13, 2017 incident involving Plaintiff and his supervisor. Defendant's theft report only listed Plaintiff and his supervisor as involved in the theft, Def.'s CSF, Ex. C, and Mr. Rampon reported the missing batteries to Defendant. *Id.* at ¶ 7, Cahinhinan Decl. at ¶ 8. Plaintiff's mere speculation that Mr. Rampon loaded the battery yet was not terminated or forced to resign cannot serve as a basis to find

that he was similarly situated to Mr. Rampon and that Defendant treated Mr. Rampon more favorably. *Vasquez*, 349 F.3d at 641 (finding that the plaintiff was not similarly situated to a co-worker who held the same level position but "did not engage in problematic conduct of comparable seriousness to that of" the plaintiff). Accordingly, Plaintiff has failed to establish that Defendant treated similarly situated non-Laotian individuals more favorably.

If a plaintiff cannot show evidence that a similarly situated employee outside the plaintiff's protected class was treated more favorably, he or she can still meet the fourth element by providing evidence that "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn*, 615 F.3d at 1156; *see also Furukawa*, 85 Hawaiʻi at 15, 936 P.2d at 651. Plaintiff has not adduced any evidence beyond his suspicion that Defendant favors Filipinos that could give rise to an inference of discrimination.

As already discussed, Defendant terminated Plaintiff's Filipino supervisor involved in the same incident without offering him an opportunity to resign and filed criminal charges against him. And Plaintiff's unsubstantiated claim that Mr. Rampon was involved in the incident but not terminated does not give rise to an inference of discrimination because the evidence does not reveal that Mr. Rampon was implicated, much less involved with or a participant in the theft. The bulk of the Responsive CSF disclaimed Plaintiff's knowing involvement in the theft.

However, even if Defendant improperly coerced Plaintiff to resign based on the result of its theft investigation, there is an absence of evidence that the forced resignation had anything to do with his Laotian ancestry. To the contrary, the resignation—whether forced or not—was for violation of company policy as set forth in the Employee Handbook. Indeed, the same violation resulted in termination for Plaintiff's Filipino supervisor.

Based on the foregoing, the record does not show that Plaintiff was similarly situated to Mr. Rampon, or that Defendant treated Mr. Rampon more favorably. The Court thus finds that Plaintiff has failed to establish a prima facie case of ancestry discrimination and hereby GRANTS summary judgment in Defendant's favor as to Count I.[10]

E. Supplemental Jurisdiction Over the Conversion Counterclaim

Because summary judgment is granted in full, the only claim remaining is Defendant's conversion counterclaim. The Court has the discretion to decline to exercise supplemental jurisdiction because summary judgment is granted as to Count II, which provided the basis for original jurisdiction. 28 U.S.C. § 1367(c). When "all federal-law claims are eliminated before trial, the balance of factors to

---

[10] Defendant additionally requests judgment as a matter of law on Plaintiff's front and back pay damages and reinstatement "claims." These prayers for relief are not standalone claims and are mooted by the granting of Defendant's Motion. Consequently, the Court need not separately address them.

be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Acri*, 114 F.3d at 1001. These are the same factors to be evaluated in determining whether state law claims should be dismissed or remanded to state court. *Carnegie-Mellon*, 484 U.S. at 351-53.

Here, considerations of judicial economy, convenience, fairness, and comity weigh in favor of declining jurisdiction over the conversion counterclaim and remanding it to state court. Under the present circumstances, remand, as opposed to dismissal, is appropriate. *Carlsbad Tech.*, 556 U.S. at 640-41. (recognizing the district court's authority to remand case to state court after declining to exercise supplemental jurisdiction). Given the passage of time since the alleged battery theft, remand will ensure that Defendant will not be time barred from asserting the conversion claim. *Carnegie-Mellon*, 484 U.S. at 351-52 ("[A] remand generally will be preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case."). Even if the applicable statute of limitations has not expired, remand will promote economy, convenience, fairness, and comity. A dismissal would increase both the expense and the time involved in enforcing state law because it would require Defendant to

initiate a new action to assert the conversion claim, Plaintiff would have to respond for a second time, and the state court would have to reprocess the case. *Id.* at 353 (increasing the expense and time involved in enforcing state law, "even taken alone, provides good reason to grant federal courts wide discretion to remand cases involving pendent claims when the exercise of pendent jurisdiction over such cases would be inappropriate"). Convenience is a wash because it is equally convenient for the parties to litigate in federal and state forums. Finally, although the Court elected to address Plaintiff's HRS § 378-2 claim, it finds that the conversion claim is a discrete state law issue that will necessarily involve an evidentiary record that has yet to be developed and presented.

For these reasons, the Court declines to exercise supplemental jurisdiction and REMANDS Defendant's counterclaim to the Circuit Court of the First Circuit, State of Hawai'i.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court GRANTS Defendant's Motion for Summary Judgment and REMANDS Defendant's counterclaim to the Circuit Court of the First Circuit, State of Hawai'i.

IT IS SO ORDERED.

DATED:     Honolulu, Hawai'i, May 30, 2019.

Jill A. Otake
United States District Judge